Company v. Tammy Cooley, Walter Cooley, and Sunrise Trading Post. You may approach and proceed. May it please the Court. Your Honors, my name is Brian Kimball, and I am here today representing the appellants in the case, Walter and Tammy Cooley and Sunrise Trading Post, LLC. In my view, the most important issue in this case is the issue of estoppel. What had occurred in this case, without going too far into the facts, was that our clients were provided an attorney by Grain Dealers, the insurance company, to defend them in claims that were arising from a gasoline leak that may or may not have emanated from a gas station that they had owned in Petal, Mississippi. The attorney's conflict arose and is really contained and encapsulated in the Grain Dealers Mutual, in their response to the Cooleys claim letter alerting Grain Dealers of the Mississippi Department of Environmental Quality investigation. The letter is a short letter, and I just want to read two small parts of it for the Court because I believe they're important. One part, and this is quoting, if you're ordered to take part in the actual cleanup of the gasoline leak, it will not be covered. In other words, there could be other things that are covered, diminution in property, adjacent landowners, et cetera, et cetera, but one category of cost, the letter clearly states that the insurance company is not going to cover the Cooleys. The next sentence I'd like to read for you is this, quote, the good news is, is that your policy will defend you, and we have hired Silas McCarron of Daniel Coker Horton and Bell Law Office to defend you in this matter. So, in other words, the letter gives an unqualified statement that the Grain Leak claims, including the claims brought by the Mississippi Department of Environmental Quality. The letter goes on to tell the Cooleys that Mr. McCarron will be in touch with you and you need to cooperate with him. This, of course, implicates a very important part of Mississippi law on insurance companies and their duty to defend. It implicates, primary decision it implicates is the Mueller decision, which has been part of Mississippi insurance law for over 20 years. And what Mueller says is if an insurance company provides an attorney for an insured, if there is, quote, any possible basis for a conflict, then the insurance company has the obligation to identify that conflict and to tell the insured of that conflict and tell the insured of their right to obtain independent counsel that would only be looking after the insured's best, you know, the insured's best interest. Here, Mr. McCarron had in this conflict, and we noted to the district court in the record, his internal documents referred to his real client in those documents as grain dealers. He had a motivation to steer the defense of the gasoline leak claims toward those types of costs that the insurance company said that were not covered. And unfortunately, Mr. McCarron's actions were consistent with the worst fears about what his conflict could bring about. The MDEQ, about four months after this letter was sent, MDEQ entered an order. It was an ex parte order done without an evidentiary hearing. It's common when there's environmental contamination to do something like that because the environmental regulatory agency wants to act quickly. The order's about five pages long. It's fairly dense. It's full of references to various Mississippi environmental statutes and federal environmental statutes. And under Mississippi law, and it's very plain that it was conducted ex parte without an evidentiary hearing, under Mississippi law, what the statute says is for an ex parte order of this nature, and the order stated this internally, for an ex parte order of this nature, an aggrieved party has 30 days to petition the MDEQ for an evidentiary hearing. What the law also says is that if the party does not petition the MDEQ for an evidentiary hearing and an evidentiary hearing is not held, then the insured loses their right, not the insured, the party aggrieved by the order loses their right to appeal the order, and the order becomes binding forevermore. So Mr. and Ms. Cooley, Sunrise Trading Post, were implicated in this order, as well as there were three other parties to the order. It was the Morgans who purchased the gas station after the Cooleys, as well as a company called Pine Belt Oil Company that operated the above ground storage tanks at the gas station once the gas station had been sold. Mr. McCarran let the 30 days for the 30-day period to petition the MDEQ to lapse. And, you know, one way to look at what he had done was that my client, my ultimate client, the insurance company, isn't going to pay for cleanup costs anyway. They've disclaimed liability for cleanup costs. That's on the grain dealer's money, defending against costs that even though the company said they would defend against that action, why would I waste my money defending against these costs that the insurance company, my client, has already said that they would not cover? And you can see, too, the motivation of I've participated somewhat in some of these environmental evidentiary hearings, and they're as expensive as a trial in federal court sometimes. I mean, you would need hydrologists. You would need environmental experts. This would be expensive, big-time litigation, and it would be very costly to the insurance company. Now, it seems like the district court determined that you not only had to show that they should have sought the appeal, but that they would have won. That's correct. And what authority says that's wrong? The authorities that state that are wrong, I think, are the Logan case from Mississippi and also, Your Honor, I believe the Twin Cities case from this Court. This Court, that case relies heavily both on Mueller and on the Logan case. And the question is for him to make that decision on summary judgment that we did not show any evidence of prejudice. He would have not been able to appoint to any type of prejudice. I would submit to you in the Twin Cities case that this Court handed down, it was, this Court was very, very liberal in what could consider, what could be considered as prejudice enough to defeat summary judgment. And one of the things this Court said would be an adverse ruling in the underlying litigation. Well, I think entry of the MDEQ order in and of itself, right, is worse than the ruling in Twin Cities that the Court here found was sufficient to implicate estoppel and was sufficient enough prejudice at least for there to be further proceedings in it to go to trial. Another thing that this Court looked to in the Twin Cities case was the potential for result of liability as a result of the conflict created by the, by the insurance company. And, you know, in this instance, obviously, and it's in our briefing, the liability of my clients has been set by that order. But the scope and amount of the liability is still pending. The MDEQ proceedings are still ongoing. So the potential that we would have to pay something down the road, and that's not really a potential, it's a certainty, it's only how much, that was enough to show prejudice in Twin Cities. Twin Cities also said there's enough prejudice just by the conflict itself, might have, they didn't have proof of it, but they said that conflict between the insured and the insurance company, that attorney representing them both, might use confidential information he got from the insured to help the insurance company in their coverage dispute. There was no evidence that that had actually occurred, but they said the potential that that occurred was prejudiced enough. All of this was presented to the district court in this case, but he ignored it. And here, and I do want to point out on that last part, okay, this was before the district court on the issue of whether this attorney was discussing coverage issues with grain dealers. This is from the claims file. It states, spoke with Silas McKeeran, he was the attorney, at Daniel Coker in Jackson. The next entry under that sentence is total pollution exclusion never been tested in Mississippi. Finish investigating first under reservation of rights. They never did a reservation of rights letter, but it clearly indicates they were using this attorney to discuss coverage issues. But perhaps even more compelling on this issue, in terms of the district court stating that we had to have proven we would have won at the level of the MDEQ, even more compelling decision in my mind is very analogous to this case. It's from the Mississippi Supreme Court, relied on by this court in the Twin Cities case. And in that case, there was an insured, and the insurance company had led the insured to believe that they were defending her. They said, we're going to settle this case. We're going to try to. While they were trying to settle this case, the plaintiff in the underlying litigation got a default judgment against the insured. The Mississippi Supreme Court basically told the insurance company, that's your default judgment. You had led them to believe you were defending this case. A default judgment was entered against the insured, and now you own that default judgment. What they did not say is, hey, insured, you would have had to have really shown that you would have litigated this case at the end and won. There is not even a smidgen of a hint of that sort of a position in that case. I would like to also point to one other piece of prejudice, which I feel like is a very compelling piece of prejudice. This was unrebutted declaration testimony at the district court level. Mr. Cooley, who is at the center of this dispute, he testified that, number one, the attorney, Mr. Silas McCarran, did not inform him of his right to an evidentiary hearing. Number two, he did not inform him that if he had, if he didn't seek an evidentiary hearing, that he would lose the opportunity for appeal. And he did not, and Mr. Cooley further testified in the declaration, if he had told me this, I would have wanted an evidentiary hearing. And certainly Mueller counsel, independent counsel, if I were in that role of independent counsel, I would have looked at my client and I would have said, I don't care if there's a 1% chance or a 2% chance of winning this case. The insurance company's in the bill. If you lose this, it would be catastrophic liability to you. We're talking seven-figure sort of liability. So certainly independent counsel would have, would have told him of his right to an evidentiary hearing and would have, and would have listened to his client had he asked for that right. I saw no evidence in the lower court where they said, no, that's wrong, Mr. McCarran told him that. He told him he could do it, but he said no, that wasn't doing it. I think that's prejudice enough, that in and of itself. And if you had to show that, that's, that's going to get, you think that's there because he did not, there's at least a fact issue that he didn't have noticed. Yes, Your Honor. I think with all that, I mean, I think we should have a summary judgment in our favor, but I think at the very minimum that that should have been enough prejudice. If that's what stopped the court from, or allowed the court to enter summary judgment, if the estoppel issue, and it is, if it's what allowed the district court to enter summary judgment in the insurance company's favor, I say, and prejudice was the only thing we were missing, I think the district court had before him just a plethora of prejudice for him to look at. Can you help, I'm confused about the pollution exclusion and what was litigated on behalf of your client with regard to the ambiguity of that. The pollution exclusion is, in terms of, there was briefing on that issue, and But who did that briefing? Myself and Heather Gregory. Okay, so it's after the fact, after that representation has already ceased. Oh, yes ma'am. By far, so that didn't come up in the That's right, no, no, that was never, that only came up at the district court. The MDEQ, you know, the order came down nine years ago. Right, so none of that was ever litigated contemporaneously. No, not contemporaneously, no, Your Honor. And one thing I do, I would want to, I'm running low on time, I know, I would want to raise. Pine Belt, the other party that was implicated by the order, has filed a lawsuit in state court. That's what prompted the insurance company to yank their defense in the MDEQ proceedings that are ongoing right now. That, and we say they should defend that suit, too. It isn't a suit for indemnification by Pine Belt based on the liability the MDEQ order would place on them. Had Mr. McCarran petitioned for an evidentiary hearing eight years ago at the MDEQ, the relative culpability of those parties, if any, would have been litigated at that time when the evidence was correct. And prejudice also. Yes, ma'am, that's correct, that's correct. Is there any question here as between the liability of the original owner of the property and the people to whom it was sold? Yes, yes, Your Honor. I think that is the question that is implicated in the Pine Belt state court lawsuit that came later. But it is also what would have been litigated within the context of the DEQ proceedings nine years ago. And one of the reasons, you know, we feel this is so unfair to us is for us to have to go back and gather evidence that Mr. McCarran didn't gather seven years ago is patently unfair. Some of these witnesses we put in both our briefs here and the briefs before the district court have died. These were investigators with the insurance company who had evidence of the environmental spill and had gathered it. They're gone. And now, you know, if I read the district court correctly, he would want us to have to go back and regather this evidence that has gone eight years ago. Thank you, Your Honors. I appreciate it. Thank you. Good morning, Your Honors. May it please the Court. My name is Lynn Hare. I represent the plaintiff in this case, Grain Dealers Mutual Insurance Company. And, Your Honors, I would not normally even mention a standard of review to this case because we were obviously very familiar with what standards of review apply. But I think it is particularly applicable in this case that we note what Judge Sterik wrote in the memorandum opinion about the standard of review. In his decision, he noted that in order to refute a properly supported motion for summary judgment that you had to put forth the evidence. And he went further and cited a case and said, Conclusional allegations, denials, speculations, improbable inferences, unsubstantiated assertions, and legalistic arguments are not sufficient to even create an issue of fact, which Judge just mentioned. Is there a question of fact here? For example, I will give you this. My opposing counsel got up here and testified that he would have done certain things. That is an argument he's making to you. That is not evidence that is in this record that was to be considered when the motion for summary judgment was before Judge Sterik. It's extremely important to understand. For example, the statement was made that Mr. Cooley was never told about the order. There's no question that the order went to him, Your Honor. I mean, there's no question that he was put on notice of that. And in fact. He was put on notice of the issues with it, how he had an opportunity to appeal and how that they would file an appeal on his behalf or arrange for other counsel if they had a conflict. All right. Two ways to respond to your question, Your Honor. First, there is no reservations issue in this case. Every single case that the defendants relied upon to support this alleged conflict and why we should have done that is a reservation of rights case. There was no reservation of rights in this case. Logan, Twin Cities, Moeller, all of those are reservation of rights cases. They can all be distinguished not only on that but also on a factual basis. So that argument, which is the key argument that the defendants used to support their estoppel, it doesn't apply here because there was no reservation of rights. When my client initially was notified of this order, which in the evidence there is shown was faxed to Mr. and Mrs. Cooley by Silas McCarron. There is a document in there that shows with the fax numbers across the top that it was, in fact, sent to them. Now, am I going to represent to the court that there was a meeting where Mr. McCarron sat down and spoke with them? We don't know the answer to that. The defendants in this case never elicited any evidence in that regard. They say explicitly they didn't know the effect and that they could appeal. Isn't that in the evidence? Mr. Cooley signed a declaration that said that if he had known about this order and this right to a hearing that he would have requested one. Again, that's nothing but a conclusory allegation. There's nothing to support it. He's the party that gets to make the decision, and he says that he would do this if he knew about the ramifications of it. Wouldn't anybody do that so it's not hard to believe at all? Your Honor, I would respectfully disagree. No. In fact, Mr. Cooley did speak with, and it was prior to that order, but he did speak with Mr. Brunini, who is a member of the firm representing them here today, who is an environmental lawyer. His statement is that the only reason he went to Mr. Brunini was to determine how to protect his assets. I would normally send my client to a bankruptcy lawyer or someone of that nature. But, no, he consulted with an environmental lawyer about the MDEQ investigation as soon as he determined it. It's our position that Mr. Cooley merely saying that is insufficient, and I'll give you another example that relates to the prejudice. Part of their argument is, well, they were prejudiced because they had to hire defense counsel. Okay? Nowhere in this record, Your Honor, and this is easy, easy to do, was there a single bill filed to show, nothing filed to show that they incurred any expenses, paid any expenses, no evidence whatsoever from Mr. Brunini about anything like that. And that's, I think, what Judge Sterritt was pointing to is that anybody can get up here and make a statement, but that does not necessarily create sufficient evidence. Okay. Did, is it McCarron or McCarron? McCarron. McCarron. Did McCarron withdraw the defense in the MDEQ when he didn't request the evidentiary hearing? No. He was providing good defense. Actually, I can, the evidence will reflect, and the corporate representative for grain dealers was named Mr. Brian Brennan. His entire transcript is in the record. In that deposition, he testified that grain dealers actually spent hundreds of thousands of dollars for the very things that you were just told were necessary. Hydraulics, experts, all of those things. In the very first letter he refers to where a grain dealer says, we're going to provide you a defense, there is also a statement by the adjuster saying, we've already retained experts, we are going to do a title search, we've hired Mr. McCarron. To argue to this court that Mr. McCarron did not provide a proper defense is tantamount to, I don't know what, because if you look at the record, the whole idea was, because this leak occurred over a period of time, was to determine who owned the property when it occurred. Grain dealers paid all of the money in an attempt to ascertain that the owner owned the property when the leak occurred. That is clearly in the evidence that all of that was done. Mr. McCarron attended MDQ hearings. There's no question. The only thing they point to is that he did not request this 30-day or this hearing within 30 days. Why didn't he request it? Nobody knows. Nobody knows that, Your Honor. There's nothing in the record to reflect why he did not do that. But I think the point Judge Sterritt was making is that even if you'd gone to an environmental lawyer, maybe under these circumstances, he would have said no, in this particular case, we don't want to do that, strategy-wise. What strategy could there possibly be in not trying to appeal this thing that was going to be so significant? Because if there was a finding, for example, Your Honor, if they alluded to that, in fact, the property was not owned by the Cooleys at the time of the discharge, there would be no way to collect any money from them for that. In fact, the only monies that have been collected have been collected from the owners of the property after the Cooleys. That is the Pine Belt lawsuit that he referred to. Did you argue, or someone else on behalf of your client, that the MDEQ action had reached its completion to the district court? We did not specifically argue that, Your Honor. What has happened is this. The MDEQ proceeding started. The testing was done. I don't know what the status is now because Mr. Cooley hasn't told us what the status is. Nobody's told us what the status is. My client testified that a defense as to the MDEQ had not been withdrawn prior to the summary judgment ruling, and there's still not been a letter or anything to that effect, but that there had been no activity. So they had closed their file. They never wrote a letter to the Cooleys saying they were withdrawing a defense of the MDEQ. They never told Mr. McCarran. They still are defending them in the MDEQ to the extent there are proceedings. To the extent of any proceedings. Now, nothing has occurred. My position would be, Your Honor, that because the declaratory judgment was filed and the judge entered the summary judgment, they no longer have a duty to defend. Of course, if Your Honor's reversed that for some reason, there still has been no withdrawal of that defense. How was McCarran's not defending the action under a conflict whenever they had disclaimed the liability for potential cleanup costs? Okay. Why isn't that an apparent conflict? Okay. First off, Your Honor, if you go to the cases that have been cited, again, they're all residential tax cases, which is what Moeller is and all of its prodigy. Okay? It points out there can be three different types of conflicts, and one of those is where the carrier may not owe any money, so they may not do a good investigation. Okay? That is clearly not what the evidence in this case shows. There is no evidence of a conflict because of the extent of the investigation that Mr. McCarran did, which Judge Sterrett noted, that they did not complain about a single thing. Saying there's no evidence of a conflict, because we keep talking about all this prejudice, and I guess when I look at Moeller, and I look at this letter, it says, this means that if you're ordered to take part in the actual cleanup, it will not be covered. That's correct. That's what it says, Your Honor. That's pretty clear to me. So what it's saying is, we're going to go ahead and provide some defense. Well, it says, the good news is that your policy will defend you, and we have hired Mr. McCarran. But they said in the very same letter, if you're ordered to take part in the actual cleanup, it will not be covered. So isn't the conflict crystallized with those two statements in that letter? No, sir, I don't think so. They've got to wait to see whether or not he vigorously defends everything on both their behalf and behalf of grain dealers, and then they make some subjective determination that he's not, and then you can identify some prejudice, and then you say, oh, okay, now, you're hurting me, so I have some evidence of an injury. Isn't the problem crystallized at the moment that the conflict is identified, and for me, it seems like it's identified in this letter? I would respectfully disagree with Your Honor. All right. I understand what you're saying, Your Honor, that to say you're defending, but you're not going to pay. But you have to understand there were other aspects of this litigation other than just the MBEQ. And in reality, what my client did, if I could give you just a quick little history that might help you with that, is that when notice first came to my client, there was no lawsuit, there was no MBEQ hearing, there was no MBEQ order. It came to my client as an attorney for Pine Belt, the subsequent owner sent something to the Cooleys who then sent it in to grain dealers that indicated someone had reported a possible gasoline spill. Okay? So my client has very limited information at that time. They have nothing to assess, really, to determine a duty to defend. So they err on the side of caution and they say, we're going to defend because we don't know what everything out there is or what's going to come up. But because of the pollution exclusion in the policy, we're not going to cover those specific costs that, I mean, that fall within that pollution exclusion. Okay? Now, Mr. McCarron is hired. What you have to understand then is that we ultimately have not only an that ultimately are filed or are noticed. Those were defended by Mr. McCarron. They were settled by my client. All those monies were paid by my client. So the activities that were done with those things obviously coincide with what was done as to the MBEQ. So while you may be correct that it appears that there may have been a conflict, in actuality, there was not one. There was no reason for Mr. McCarron to not spend the money to prevent indemnification of the remediation or cleanup. He had to do that to adequately represent them on the other claims. And, in fact, he did. Notwithstanding what the defendants want to say, there is no dispute that grain dealers stepped in, spent a lot of money because the Cooley's position was it did not occur while we owned the property. That's why you see in the letter that we've hired a title examiner to check ownership time periods, things of that nature. So I understand Your Honor's concern, but I think when you take the facts here, then that simple, the fact that the letter reads that way does not satisfy the molar requirements for a conflict of interest. And most importantly, Judge, and this is, again, why I went back to the record, there is no evidence that the plaintiffs have submitted. They want to make allegations. They want Mr. Cooley to say this. Mr. Cooley doesn't say he never discussed it with any other attorney, okay? He never says that he went to Mr. McCarron and asked any questions. And I understand that might not have been his burden to go to Mr. McCarron, but he doesn't refute that any of those things might have occurred. What difference does it make if he discussed it with another attorney? Mr. McCarron was his attorney and was supposed to advise him. I agree with that, Your Honor. I agree that under Mulder, he had an obligation to tell him about that. The reason, the only reason I point that out, the defendants in this case, again, have made conclusory statements that they want you to make inferences from. In other words, they want you to infer from a blanket statement. Mr. Cooley actually signed two declarations in this case. First, when he said simply one thing, then he tried to expound upon it after briefs were filed. Those conclusory things, though, you are not allowed, I don't think, at this stage, under summary judgment, to make inferences from those things. And I disagree that under Twin City, you can rely upon a mere inference or presumption to be evidence of prejudice in this case. Those cases are very distinguishable. In Twin City, for example, one, it's a reservation of rights case, which is not what we have here. There is also, there was mention about gathering coverage information or information that could go to the coverage issue by this counsel. And that didn't occur, but, in fact, it did. When you read the opinion, it did. The attorney represented that he had met with the city's attorney and they had agreed that there would be no conflict and they could proceed. So there were much more egregious facts there that led to the ruling by the court. If you look at Logan, it's the same way. In that case, and I'd even be a plaintiff's lawyer in that one, Your Honors, to be honest with you, because the insurance company did not even notify the insured that they were not going to defend until after a default judgment was entered against them. So those are factual circumstances that are extremely different here. And, again, Judge Graves, to respond to your question, I clearly understand what you mean by when you first read that letter. But if you move from that to what happened, what Mr. McCarran actually did, there is also in the record, I will say, within a month, 30 days, of Mr. McCarran being hired, if not less, there is a note in the record indicating that he spoke with Mr. Brunini, who Mr. Cooley admits that he went and spoke with, that Mr. McCarran and he had a conversation about the MDQ investigation and what was going on. The order had not been entered yet. I don't want to mislead you. But they discussed all of this. He was very comfortable with how Mr. McCarran was proceeding. Now, Mr. Brunini filed a declaration in this case, but he did not deny that conversation. All he said was, I cannot recall that conversation. Does that conversation mean that at the time, the crucial time, that he was adequately representing rather than trying to let it go that way so that his real client wouldn't be on the hook? Well, I would have two responses, Your Honor. I mean, one, first off, they didn't end up paying less, actually. That's again, the defendants don't want you to know about the amount of money that was paid by grain dealers to represent the Cooleys and to settle all of the other lawsuits that were against them that arose out of this. Not the Pine Belt? The Pine Belt. The Pine Belt did not file a lawsuit until after the declaratory judgment was pending. So that is different, Your Honor. I will agree we did not defend that case, we being my client. But everything up to that point was done. Now, I'm not going to stand here in front of you and say that Mr. McCarran, in the best of all worlds, should have sat Mr. Cooley down after he became counsel and explained maybe to him, okay, this is what this says, these are your options. These are things you can do. I'm not going to push that off on someone else. I don't think my client would do that either. But that in and of itself does not create sufficient prejudice. Again, if you read Twin City, if you read Moeller, if you read Southern Farm Bureau v. Logan, all of these cases that we cited in our brief, as well as some that were discussed by defendants' counsel here, you will see there are much more egregious circumstances that are required, and most of all, they require evidence. And that was Judge Sterritt's finding, that after reviewing the record, even if, and he did not agree, or its prodigy applied, but even if it did apply, that they had failed to present to the court sufficient evidence. And that is the key here, Your Honor. There were so many things that could have been presented that were not presented, and it's our position that a mere statement by someone does not create a sufficient basis of a genuine issue of material fact to refute a properly supported summary judgment motion, which is what we had in this case, and which is what Judge Sterritt noted, that there was, and any of these things could have easily been obtained and filed a record. They complain of defense costs. Not a single invoice was presented for the court to review. There's no evidence that Mr. Cooley has paid a dime ever for those things. So I think it's inappropriate for this court or the district court at the lower level to have considered those arguments when there was no real evidence to support those arguments. Anybody can say, I would have done so-and-so eight years later. We don't know what would have occurred at that time. We don't know what any attorney would have recommended. We don't know if he would have gone to another attorney, even if Mr. McCarran had said, you have the right to do that. We don't need to know that he definitely would have gone forward. We just need to know that the counsel was laboring under a conflict and he didn't do the thing that would seemingly, without any explanation, didn't do the thing that would protect his client, but instead did something that would advance his true client's interest. Well, I would disagree that Grain Dealers was his true client. He said that. I'm using his own words. Didn't he say that? My real client? I thought he had some document where he says that. There is a document that they pulled from Mr. McCarran's record, and may I proceed, Your Honor? Yes. Where you do a conflict check when you get a new file in and it has client and insured. Grain Dealers' name appeared next to client and the Cooley's name appeared next to insured. There is nothing else in the thousands and thousands of pages that came from Mr. McCarran to indicate that he considered Grain Dealers' interests above those of the Cooley's. And again, I take you back. Those circumstances where they find those things are where there is a reservation of rights. I'm trying to figure out how citing to that document helps you. That's one where he identified that his client was Grain Dealers. Right? It didn't even say his client was the Cooley's. Did it? My point, Your Honor, is, and frankly, they refer to the one document and it was never produced to us. But I would say that it's an administrative document. It does not reflect the action that Mr. McCarran took in his defense of the case. It does not reflect the amount of money and time. There is nothing in this record to indicate that anything that Mr. McCarran asked for to represent the Cooley's was not authorized by Grain Dealers and paid for by Grain Dealers. Except the idea that if at the end of the day they would not pay costs. So the conflict is apparent on the face. Yes. Cleanup costs. It's apparent on the face of the representation letter that there is already a conflict. Yes. The MDQ order is not only cleanup costs, it also involves testing, remediation, all of those other things that come along when you have a contaminant like this. Those experts were paid by Grain Dealers. Right. So some of it's paid but some of it's going to be held back automatically. That's correct. But they know that up front. So again, it's not a reservation of rights defense. And the Mississippi law indicates that where this situation arises where the attorney has a conflict is where there is a reservation of rights defense. And that is not the case here. I mean arguably my client didn't have a duty to defend. I mean I think that's what's meant by Judge Starrett's footnote. But they stepped in and they defended. And that one fact alone that Mr. Cooley says I would have done this and your Honor's opinion that you should have done this is not sufficient evidence in a situation where there is no reservation of rights to provide evidence of the prejudice necessary to create a fact. Well I may take issue with your reading of MOLA that it only applies in a reservation of rights case. And I know that's what we had in MOLA. But you're out of time. So I offer no position. Your Honor counsel appeared to state that statements made in declarations aren't valid summary judgment evidence. I mean you might not believe the statement. You might not believe Mr. Cooley would have wanted to have been hearing. But he testified under oath in that declaration. And the declaration is valid summary judgment evidence that he wasn't told of his rights and if he had been told he would have wanted to exercise those rights. And that's in the record and that's valid. You can't just say that's unbelievable. We can't believe that. The court is not supposed the district court is not supposed to be making credibility determinations at that stage of the proceedings on summary judgments. The other thing I would want to point out counsel opposite raised this and I think it's an important point that she stated that the document that we had that identified grain dealers as the client we hadn't produced that to them and I know this sounds like it's in the weeds but I'll bring the point around the reason we didn't produce that to them because it wasn't our document we had to subpoena Mr. McCann we asked Mr. McCann for his file because we were supposed to be his clients my clients were supposed to be his clients and he said I'm not going to give it to you. You're going to have to subpoena me so and that was also part of the summary judgment record that Mr. McCann viewed them so much as not his client that he required a subpoena to turn his client. Yes sir. Yes sir. And he still represents them. No but assuming that the MDQ is still ongoing they say he's still representing them. And that's an excellent point and I do want to get to that. If the court there's a lot of history in this case but here's one clean facet of this that in my view would really require a reversal and render just on what you know right now council officer admitted that the district court made an oversight when he said the MDQ proceedings were over and we gave the court summary judgment evidence that they weren't over in a declaration and they're stating well we agreed to defend them in the MDQ proceedings and I'll assure you MDQ proceedings are ongoing because I've been to them but I know that's not in the record but there is record evidence of that but on that point along reverse and render on whether they have a duty to defend the MDQ proceedings because they're stating they're not arguing that they had they don't have a duty to defend those proceedings and they're stating they've never withdrawn it. They did withdraw it but based on their assertions right now that point can be reversed and rendered on its own on agreement of both the parties one other thing your honor let's see I did go through council officer stated we saw no evidence in the record of prejudice I won't go through the litany of evidence that I listed for you in my initial argument but I will go back to the primary point in Twin City the court said that an adverse ruling in the lower court was enough evidence of prejudice to get the estoppel argument passed summary judgment you have a MDQ order entered in this case and to your honor what does it mean to defend the MDQ proceeding and then to just let that that was the central part of the MDQ proceeding if you weren't going to defend the Cooleys against the actual allegations of liability against them I mean there are other facets of the MDQ proceeding still going on but that was the central part of it let me ask you a question what they said is we're not going to pay clean up costs in the universe of things that can happen clean up costs is one item what are the other items what else bad can happen in terms of what the insurance company might which they still theoretically supposed to pay they said they wouldn't pay clean up costs the order also imposes potential regulatory penalties which aren't clean up costs the subsequent lawsuits that they did settle those lawsuits included allegations of diminution of value in the adjacent property that's not clean up costs are they paying that they did pay some of the settlements they've paid I believe they reached settlements in a lot of these cases I think some of the settlements have some provisions in their complicated settlements and I'm not completely versed in all of them but I think they have some provisions that open up for additional viability down the road but they did pay hundreds of thousands of dollars in settlement and counsel is saying that we were trying to hide that from you I want you to know that because I want you to know they had accepted a duty to defend everything related to gasoline leak claims and we believe that that includes the Pine Belt suit and one other point is made over and over again if I can make this one last point I'm sorry Moeller says and I quote Moeller is not limited to reservation of rights and anyway what's worse telling the insurance you're going to reserve the right or not telling them then ripping the rug out from them eight years later Thank you We're going to take a recess before